In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1256

TERI JENDUSA-NICOLAI, *et al.*,

*Plaintiffs-Appellants*,

*v.*

DAVID M. LARSEN,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cv-00204-JPS—**J.P. Stadtmueller**, *Judge*.

SUBMITTED MARCH 28, 2012—DECIDED APRIL 18, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant in this adversary proceeding in bankruptcy, David Larsen, attempted to murder his ex-wife, Teri Jendusa-Nicolai. He was convicted of state and federal crimes and sentenced to life in prison. Although his attempt had failed, he had inflicted severe injuries that resulted in her suffering a miscarriage and the amputation of all her toes; for after

beating her with a baseball bat he had sealed her in a garbage can filled with snow and left it (and therefore her) in an unheated storage facility, causing severe frostbite. In a tort suit that she brought together with her present husband and her two daughters, a Wisconsin state court awarded her a $3.4 million judgment against Larsen for battery, false imprisonment, and intentional infliction of emotional distress, and her husband and daughters $300,000 for loss of consortium.

Larsen filed for bankruptcy under Chapter 7 of the Bankruptcy Code (liquidation), seeking to discharge these judgment debts. Collateral estoppel precluded his challenging in the bankruptcy proceeding the findings underlying the Wisconsin judgment. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991). The bankruptcy judge ruled that his debts were nondischargeable because those findings established that they were debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" within the meaning of 11 U.S.C. § 523(a)(6). The district court affirmed the bankruptcy judge.

An injury is willful within the meaning of section 523(a)(6) only if intended; if it's the result but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable, *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) ("nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury," *id*. at 61), even if the injury was the result of a reckless act. *Id*. at 61; *Maxfield v. Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)

(per curiam). Indeed, not even all intentional torts are covered. *Williams v. International Brotherhood of Electrical Workers Local 520*, 337 F.3d 504, 508 (5th Cir. 2003); *Miller v. J.D. Abrams Inc.*, 156 F.3d 598, 603-04 (5th Cir. 1998); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). Debts resulting from fraud, for example, are covered in different sections of the Bankruptcy Code. *Berkson v. Gulevsky*, 362 F.3d 961, 963-64 (7th Cir. 2004). And an intentional tort needn't involve an intent to cause injury. *Wheeler*, for example, involved a debt for libel, and libel can be committed by someone who believes, though negligently or even recklessly, that his libelous statement is privileged because it's true; such a debt is therefore dischargeable.

Larsen doesn't have that excuse, but he argues that the Wisconsin court did not decide that he'd intended to inflict the *specific* injuries, such as the loss of his ex-wife's toes, that resulted from his attack on her. But obviously he intended to injure her—he was convicted of attempted murder, after all—and the destruction of her toes and the miscarriage were foreseeable consequences of the intentional torts that gave rise to the debt he seeks to discharge.

He argues that at least the punitive-damages component of the debt ($1.5 million) is not *for* "willful and malicious injury" but rather for punishment and deterrence. But punitive damages are a debt owed by a tortfeasor to his victim, and in this case they are a debt consequent upon a willful and malicious injury. See *Fischer v. Scarborough*, 171 F.3d 638, 644-45 (8th Cir.

1999); *Hagan v. McNallen*, 62 F.3d 619, 626-27 (4th Cir. 1995).

And finally he argues that he didn't intend to injure his ex-wife's husband or her children; their claims are claims for loss of consortium and are therefore derivative from her claims. Indeed they are derivative—and, like the award of punitive damages, derivative from the injury that the debtor committed intentionally. *Phelps v. Physicians Ins. Co.*, 768 N.W.2d 615, 634-36 (Wis. 2009); *Finnegan ex rel. Skoglind v. Wisconsin Patients Compensation Fund*, 666 N.W.2d 797, 804-05 (Wis. 2003).

We can't find an appellate case on this precise point—the nondischargeability of a claim for loss of consortium derivative from a willful and malicious injury. But that it is not dischargeable follows directly not only from the cases dealing with punitive damages but also from cases that hold that debts arising from wrongful-death suits are not dischargeable even when the creditor fighting discharge is not the victim of the wrongful death but the victim's estate or the estate's representative. *Fezler v. Davis*, 194 F.3d 570, 574 (5th Cir. 1999); *Smith v. Pitner*, 696 F.2d 447, 447-49 (6th Cir. 1982) (per curiam).

So Larsen loses—and loses regardless of the precise meaning of "willful and malicious." But in the course of our research we have discovered to our surprise that courts are all over the lot in defining this phrase in section 523(a)(6). It is the same kind of pseudo-conflict among circuits that we encountered in *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*,

626 F.3d 958, 960-63 (7th Cir. 2010): different legal definitions of the same statutory language that probably don't generate different outcomes.

The Second Circuit defines "malicious" as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006), quoting *Navistar Financial Corp. v. Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996). The Fifth Circuit equates "willful and malicious injury" to "either an objective substantial certainty of harm or a subjective motive to cause harm." *Williams v. International Brotherhood of Electrical Workers Local 520, supra*, 337 F.3d at 509, quoting *Miller v. J.D. Abrams, Inc., supra*, 156 F.3d at 606. The Sixth Circuit, in *Wheeler v. Laudani, supra*, 783 F.2d at 615, defined "willful" as "deliberate and intentional," and "malicious" as "in conscious disregard of one's duties or without just cause or excuse; it does not require ill will or specific intent to do harm." After the Supreme Court's decision in *Kawaauhau v. Geiger*, the Sixth Circuit, without questioning the definition in *Wheeler*, said that the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell*, 190 F.3d 455, 465 n. 10 (6th Cir. 1999). Yet the Eleventh Circuit continues to use a formula almost identical to that in the Sixth Circuit's *Wheeler* opinion: "'Malicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will. To establish malice, a showing of specific intent to harm another is not necessary." *Maxfield v. Jennings, supra*, 670 F.3d at 1334 (internal quotations and citations

omitted). We too had quoted *Wheeler*'s formula approvingly, in *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994), but we have not revisited the issue since *Kawaauhau v. Geiger.*

The Eighth Circuit says that conduct is "malicious" only if it is "certain or almost certain . . . to cause harm." *Fischer v. Scarborough*, *supra*, 171 F.3d at 643, quoting *Johnson v. Miera*, 926 F.2d 741, 743-44 (8th Cir. 1991). The Ninth Circuit requires, for willfulness, a showing "either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct," while "a 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Petralia v. Jercich*, 238 F.3d 1202, 1208-09 (9th Cir. 2001) (emphasis in original), quoting *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc). The Tenth Circuit in *Panalis v. Moore*, 357 F.3d 1125, 1129 (10th Cir. 2004), fused "willful" and "malicious," saying that "willful" means "the debtor must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it'" (quoting *Mitsubishi Motor Credit of America, Inc. v. Longley*, 235 B.R. 651, 657 (10th Cir. BAP 1999), quoting in turn *Restatement (Second) of Torts* § 8A (1965)), while "malicious" requires "proof 'that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury'" (quoting *Hope v. Walker*, 48 F.3d 1161, 1164 (11th Cir. 1995)).

Notice the redundancies—"deliberate and intentional," "objective . . . certainty" ("subjective certainty" is an oxymoron; the proper term is "certitude"—confidence, often misplaced, in the correctness of one's belief), "subjective motive," "will or desire," "wrongful act . . . done without just cause or excuse." Notice the ambiguity of a phrase like "specific intent to do harm"—how does that differ from "intent to do harm," the latter being required by *Kawaauhau v. Geiger*? And what does "*necessarily* causes injury" mean? And is "objective substantial certainty of harm" really intended to substitute for intent to harm, or is the point rather that if harm is certain we disbelieve that it was inflicted accidentally? Notice that the Eighth Circuit, in defining "malicious" as "certain or almost certain . . . to cause harm," confused a state of mind (malice) with the consequence of an act (harm). Notice finally that each circuit seems content to go its own way, without attempting to reconcile its verbal formulas with those of the other circuits.

But whatever the semantic confusion, we imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act. To allow him to shirk liability by discharging his judgment debt in those circumstances would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law. "The principal purpose of the Bankruptcy Code is to grant a fresh start to the *honest*

*but unfortunate* debtor." *Marrama v. Citizens Bank of Massa-chusetts,* 549 U.S. 365, 367 (2007) (emphasis added, internal quotation marks omitted); see also *Disch v. Rasmussen*, 417 F.3d 769, 774 (7th Cir. 2005). Actually it's not *the* principal purpose of the Bankruptcy Code; it's *a* principal pur-pose—another is to minimize creditors' losses from defaults. No matter; an honest but unfortunate debtor Larsen is not. And "in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the [Code] limits the opportunity for a com-pletely unencumbered new beginning to the 'honest but unfortunate debtor.'" *Grogan v. Garner*, *supra*, 498 U.S. at 286-87, quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934).

The bankruptcy judge was right not to discharge the debts arising from Larsen's brutal attack on his ex-wife.

AFFIRMED.

4-18-12