**In re Michael GERARD and Nancey Gerard, Debtors.**

**Kevin Gerard and Margaret Gerard, Plaintiffs,**

**v.**

**Michael J. Gerard, Defendant.**

**Bankruptcy No. 12–21108–svk. Adversary No. 12–2291.**

United States Bankruptcy Court, E.D. Wisconsin.

Nov. 5, 2012.

Matthew W. O'Neill, Fox, O'Neill & Shannon, SC, Patrick B. Howell, Milwaukee, WI, for Plaintiffs.

Kathryn L. Mayer, Kerkman & Dunn, Michael P. Dunn, Milwaukee, WI for Defendant.

## MEMORANDUM DECISION ON THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SUSAN V. KELLEY, Bankruptcy Judge.

Kevin and Margaret Gerard filed this adversary proceeding contending that a state court judgment in their favor against Kevin's brother, Michael Gerard, is not dischargeable in Michael's bankruptcy. Kevin and Margaret filed a Motion for Summary Judgment that Michael opposed. After briefing and oral argument, the Court issues this Memorandum Decision.

*Facts*

This dispute involves a parcel of vacant land on Lake Michigan in the Town of Grafton, Ozaukee County, Wisconsin that the parties refer to as "Lot 3." In August 2007, Michael made an offer on Lot 3, but was unable or unwilling to complete the purchase on his own. Michael asked for Kevin's assistance, and they sought financing from TCF Bank. TCF Bank requested a written business plan for the purchase and development of Lot 3, and Michael and Kevin arranged for their father, an attorney, to draft an Agreement. Under the Agreement dated October 12, 2007 (the "October Agreement"), Kevin and his wife Margaret would fund the down payment, obtain a mortgage for the balance of the purchase price, and take title to Lot 3. Michael would make all of the payments on the mortgage, real estate taxes, and a construction loan for construction of a single family residence. Upon completion of construction, Kevin and Margaret would deed Lot 3 to Michael, in exchange for Michael's payment of their out-of-pocket costs relating to the purchase and an agreed-upon interest rate.

TCF Bank declined to complete the financing. According to Kevin, Michael agreed to destroy the October Agreement, and the parties entered into a new oral agreement. Under the oral agreement, Michael would assign the purchase contract to Kevin and Margaret who would purchase Lot 3 and hold it for one year. Michael would pay all the expenses for the year, and then Michael would purchase

Lot 3 from Kevin and Margaret. Kevin and Margaret obtained financing from Ozaukee Bank in the form of a one-year note for $456,000 with interest at 5.995% per annum, and purchased Lot 3 on November 16, 2007. Michael contributed $5,250 to purchase Lot 3 and paid the holding costs between November 2007 and September 2008.

When Michael decided to get married, Kevin concluded that Michael was no longer interested in purchasing Lot 3, and Kevin decided to sell the property. In September 2008, Kevin sent e-mails and a letter to Michael offering to pay Michael $54,049.10 to reimburse Michael for all of the expenses Michael had paid. In a September 24, 2008 letter, Kevin told Michael not to tamper with Kevin's "For Sale" signs. Michael did not accept Kevin's offer, but on September 26, 2008 recorded a "Memorandum of Interest" with the Ozaukee County Register of Deeds. The Memorandum of Interest states that Kevin and Margaret acquired title to Lot 3 for convenience only and that they hold title for the benefit of Michael. The Memorandum provides that "a copy of pertinent portion of the Contract is attached hereto as Exhibit A." Exhibit A consists of the October Agreement. Michael claims that by recording the Memorandum of Interest, he was merely putting potential purchasers on notice of his equitable ownership interest in Lot 3. Kevin learned of the Memorandum of Interest in 2009 when a potential buyer searched the land records and found it. Kevin maintains that Michael never told him about the recording of the Memorandum of Interest, and that the parties' oral agreement supersedes the October Agreement.

On October 23, 2009, Kevin and Margaret sued Michael in the Ozaukee County Circuit Court to quiet title on Lot 3. They asserted claims for slander of title and breach of contract. Michael appeared and defended himself in the Ozaukee County action. After a two-day trial, the twelve-person jury returned a verdict against Michael. In the slander of title portion of the Special Verdict, the jury concluded that Michael caused the recording of the Memorandum of Interest, and that he knew or should have known that the contents, or part of the contents, of the Memorandum were false, a sham, or frivolous. The jury also found that Michael did not have reasonable grounds for believing the truth of the Memorandum's contents and that the recording of the Memorandum deprived Kevin and Margaret of a market that would have been available to them if the Memorandum had not been recorded. As to the breach of contract claim, the jury found that Michael had an agreement with Kevin and Margaret to purchase Lot 3 from Kevin and Margaret and to reimburse their out-of-pocket costs, and that Michael breached that agreement. The jury determined that Kevin and Margaret suffered damages in the amount of $280,000, but the jury did not allocate the damages between the slander of title and breach of contract claims. The jury was not asked in the Special Verdict to award punitive damages to Kevin and Margaret, and it did not do so.

In Motions after the Verdict, the Court assessed $1,000 of punitive damages against Michael under Wis. Stat. § 706.13(1) and entered an Interlocutory Judgment on the Verdict on December 9, 2011 in the amount of $281,000. Kevin and Margaret filed a Motion to determine that the damages awarded by the jury were recoverable on the slander of title claim; Michael opposed this Motion. The filing of Michael's Chapter 11 petition stayed a hearing to determine whether Kevin and Margaret were entitled to an additional award of attorneys' fees.

Kevin and Margaret filed this adversary proceeding on April 30, 2012 and sought a determination that Michael's debt to Kevin and Margaret is nondischargeable under § 523(a)(6) of the Bankruptcy Code. That section provides that a discharge does not include a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." Kevin and Margaret filed a Motion for Summary Judgment, contending that the verdict in the Ozaukee County action should be given preclusive effect. Michael objected.

*Analysis*

■ Only a bankruptcy court can grant a discharge, and the bankruptcy court therefore has exclusive jurisdiction to determine the dischargeability of a debt based on fraud, willful and malicious conduct and the like. 11 U.S.C. § 523(c); *Stoll v. Conway*, 148 B.R. 881, 883 (Bankr. E.D.Wis.1992). Although state court judgments on questions of fraud, willfulness, malice, and other issues may not bind a bankruptcy court in a dischargeability action, under certain conditions debtors will be collaterally estopped from re-litigating factual determinations made in connection with such judgments in the bankruptcy court. *See, e.g., Reeves v. Davis (In re Davis)*, 638 F.3d 549 (7th Cir.2011) (factual finding that contract included a term was binding on bankruptcy court, but state court litigation did not include finding of debtor's intent). The Supreme Court has explained that: "Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). In determining whether to give a Wisconsin state court judgment preclusive effect, this

Court must apply Wisconsin law. *Worldwide Prosthetic Supply, Inc. v. Mikulsky (In re Mikulsky)*, 301 B.R. 726, 728 (Bankr.E.D.Wis.2003). *Mikulsky* listed Wisconsin's four elements of issue preclusion: "(1) The prior judgment must be valid and final on its merits. (2) There must be an identity of issues. (3) There must be an identity or privity of parties. (4) The issues in the prior action must have been actually litigated and necessarily determined." *Id.* at 728–29. "The party asserting the doctrine has the burden of proving that all of the threshold requirements have been met.... To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts." *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 382 (9th Cir. BAP 2011) (explaining further that "[r]easonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion"). There is no dispute that the judgment in the Ozaukee County action is final and that the parties are identical, but Michael challenges Kevin and Margaret's claim that the issues are identical.

■ Michael argues that whether he acted willfully and maliciously was not at issue in the Ozaukee County action, and that the jury did not decide that he acted willfully and maliciously. He is correct that neither the Amended Complaint nor the jury's Special Verdict used the terms "willful" or "malicious," but the labels are not a prerequisite to apply collateral estoppel. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (2d Cir.2006) ("Although Judge Melancon's opinion did not use the terms 'malicious' or 'malice,' his decision to award sanctions under § 1927 was affirmed by the Fifth Circuit, which has adopted standards for such an award requiring findings

that are the equivalent of findings of malice."); *Mikulsky*, 301 B.R. at 729 (rejecting debtor's claim that jury verdict on misappropriation of trade secrets did not satisfy elements when jury answered "yes" to question of whether debtor's conduct was "outrageous"). If the facts found by the jury in the Ozaukee County action establish that Michael's actions were "willful and malicious" within the meaning of § 523(a)(6), then Michael will be precluded from challenging those findings in this adversary proceeding. *See Ball, supra; see also Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987) (because the consent agreement resolved the same issues that would be litigated in the bankruptcy case, collateral estoppel applied).

 The Supreme Court defined "willful" as an act done with the actual intent to cause injury, as opposed to an act done intentionally that causes injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply the 'act itself.' " *Id.* The Seventh Circuit recently recognized that not all intentional torts meet the standard. *Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir.2012) (citing *Williams v. International Brotherhood of Electrical Workers Local 520*, 337 F.3d 504, 508 (5th Cir.2003)) (knowing breach of contract); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603–04 (5th Cir.1998) (misappropriation of proprietary information); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (libel). The cases cited by the *Larsen* court are instructive: both *Williams* and *Miller* focus on the requirement that the debtor was not found to have been substantially certain that the

debtor's conduct would injure the creditor. *Wheeler* examined the jury instructions and found that the libel verdict could have been based on the debtor's recklessness; the Sixth Circuit remanded the case for a determination of whether the jury verdict and judgment encompassed a finding that the debtor acted intentionally. After *Geiger* and *Larsen*, proof of willfulness requires: (1) an intentional or deliberate act; (2) that is either intended to cause injury or substantially certain to cause injury; (3) to a person or property. While it is a close case, the Court concludes that the jury in the Ozaukee County action made findings that satisfied these required elements.

In making this determination, the Court reviewed the entire trial transcript, jury instructions, Special Verdict, post-trial Motions, and orders and judgments entered by the Ozaukee County Circuit Court. Kevin claimed that after TCF Bank rejected the financing for Lot 3, the October Agreement was null and void and was supposed to be torn up. Kevin testified at length about the oral agreement that replaced the October Agreement, under which Kevin and Margaret would take over the purchase of Lot 3, but Michael would buy Lot 3 back within one year. According to Kevin, when Michael decided to marry Nancey, it was apparent that Michael no longer was interested in purchasing Lot 3, so Kevin decided to sell it. Kevin testified that Michael did not agree to the sale because he wanted more money than Kevin offered. When Kevin hired a realtor to market the property, the Memorandum of Interest was discovered, buyers were put off, and the Ozaukee County action ensued.

Michael testified that he was always interested in buying Lot 3, that the misunderstanding involved Kevin and Margaret's failure to apply for a construction

loan, and that Nancey would have moved to Grafton. He stated that the primary purpose for recording the Memorandum of Interest was to protect his equity interest in the property after Kevin sent him nasty e-mails and started tearing up Michael's checks and returning them. Michael admitted under cross-examination that regardless of how low Kevin reduced the price, nobody would make an offer on the property because of the Memorandum of Interest that Michael recorded against the title. Kevin and Michael's accountings differed significantly as to the amounts paid by Michael and credited by Kevin.

In answer to Special Verdict question 1, whether Michael caused the recording of the Memorandum of Interest against Lot 3 with the Register of Deeds, the jury responded "Yes." This answer shows that Michael committed an intentional act by recording the Memorandum. The more difficult issue is whether the jury considered whether Michael recorded the Memorandum with the intent to cause harm or substantial certainty that it would cause harm. The jury answered "Yes" to questions 2 and 7, which asked whether Michael knew or should have known that the contents or part of the contents of the Memorandum were false, a sham, or frivolous, and whether Kevin and Margaret were deprived of a market for Lot 3 that would have been available to them if the Memorandum had not been recorded. In providing these answers, the jury would have considered the jury instructions, explaining that questions 1 through 8 asked the jury to decide if Michael violated Wisconsin's slander of title statute. The jury instructions quoted the pertinent portion of Wis. Stat. § 706.13(1) as follows:

Any person who submits for ... recording, any lien, claim of lien, ... or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have

known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or recording.

The instructions stated that if the evidence established that Michael's recording of the Memorandum was a material cause of Kevin and Margaret's being deprived of a market for Lot 3, then the jury should answer "yes" to question 7. In this context, after considering the conflicting testimony, by answering "Yes" to questions 2 and 7, it is apparent that the jury did consider Michael's knowledge and intent in recording the Memorandum. The answer to question 2 confirms that Michael intended to cause injury by *knowingly* filing a "false, sham or frivolous" document in violation of the statute, and the answer to question 7 demonstrates that the jury found that Michael's calculated act was a direct and material cause of Kevin and Margaret's injury.

Moreover, the jury said "No" to question 3—whether Michael had a reasonable ground for believing the truth of the contents of the Memorandum of Interest. The jury instruction related to this question is significant:

Under certain circumstances, a person may have a conditional privilege to publish statements concerning a title to real estate. However, the privilege does not protect a person if abused. For the conditional privilege defense to a slander of title claim to apply, Michael Gerard must have had a reasonable ground for believing the truth of the contents of the memorandum, and the contents of the memorandum must have been reasonably calculated to accomplish a privilege

(sic) purpose. In this case Michael Gerard claims the contents of the memorandum are conditionally privileged because he claims an interest in Lot 3 to protect. An abuse of Michael Gerard's privilege occurred if he at the time of filing the memorandum or any time thereafter knew that any of the contents were false or filed the memorandum in reckless disregard as to the truth or falsity of the contents of the memorandum.

After considering this instruction, the jury's rejection of Michael's claim of privilege negates his claim that he filed the Memorandum of Interest to protect his ownership interest or innocent third parties. The jury concluded that he intentionally recorded the Memorandum knowing that the contents were false. In addition to supporting the "willfulness" prong of § 523(a)(6), rejection of the privilege satisfies the "maliciousness" standard. In *Estate of Sustache v. Mathews (In re Mathews)*, 433 B.R. 732, 735 (Bankr.E.D.Wis. 2010), this Court noted that: "The Seventh Circuit Court of Appeals has stated that malice involves acting in 'conscious disregard of one's duties or without just cause or excuse.' *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986))." *Mathews* involved the assertion of a self-defense claim in a § 523(a)(6) action and held that a valid self-defense claim negated the element of malice. In this case, the jury could have accepted Michael's version of events and afforded him the privilege of recording the Memorandum of Interest to protect his equitable interest in Lot 3, but the jury expressly rejected application of the privilege. The jury's rejection of the privilege equates to a finding that Michael recorded the Memorandum of Interest without just cause or excuse. Therefore, the jury in the Ozaukee County action considered and found the requisite elements of malice, and Michael should be precluded from claiming that he is not bound by the jury's findings in this adversary proceeding.

Michael claims that the jury could have found him liable for slander of title if an immaterial portion of the Memorandum of Interest was found to be false, a sham, or frivolous. That may be true, but review of the transcript and post-trial motions dispels the notion that the jury did so. Kevin testified that the October Agreement was null and void and was supposed to be torn up. Michael testified that in order to protect an innocent purchaser from buying the property subject to Michael's unrecorded equitable interest, Michael obtained a copy of the October Agreement from his father (who had drafted it a year earlier and still had a copy) and recorded it as the "contract." Nothing in the record suggests that the jury concluded that Michael was liable on a "technicality" such as failure to attach an Exhibit. Instead, the transcript, jury instructions, and Special Verdict show that the jury considered the Memorandum of Interest and the parties' conflicting testimony concerning Michael's motivations for recording it, and found the facts as alleged by Kevin and Margaret, not Michael.

Michael argues that Kevin and Margaret's Motion for Summary Judgment should be denied because the jury did not apportion its award between the breach of contract and slander of title claims. The Court accepts Kevin and Margaret's response to this argument. In their post-trial motion for judgment on the verdict, they contended that the jury's findings "are sufficient to support the full damages amount of $280,000 for slander of title." The Ozaukee County Circuit Court granted Kevin and Margaret's motion arguing that the damages were indivisible,

and that judgment should be recognized here.

Finally, Michael contends that Kevin provided perjured testimony about TCF Bank's rejection of the financing. The transcript shows that Michael raised questions about the alleged rejection of the financing during the trial, and Michael also raised the questionable testimony in his post-trial Motion. Unless and until the Ozaukee County Circuit Court or a Wisconsin appellate court accepts Michael's arguments about the allegedly perjured testimony, those arguments do not create a disputed issue of fact here.

*Conclusion*

Although Michael's assertions about the jury's conclusions have some merit, and the Court commends the efforts of both counsel, the Court holds that the findings of the jury correspond to the elements of a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. The Court will therefore grant Kevin and Margaret's Motion for Summary Judgment.