In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1496

KEVIN P. GERARD and MARGARET M.
GERARD,

*Plaintiffs-Appellees*,

*v.*

MICHAEL J. GERARD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-cv-114— **Charles N. Clevert**, **Jr.**, *Judge.*

ARGUED DECEMBER 3, 2014 — DECIDED MARCH 12, 2015

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Kevin and Margaret Gerard initiated this adversary proceeding seeking a judicial determination that the $281,000 interlocutory judgment they obtained against Michael Gerard for slander of title is precluded from discharge in bankruptcy under 11 U.S.C. § 523(a)(6). The bankruptcy court concluded that the interlocutory judgment was precluded from discharge and entered judgment for Kevin and

Margaret. Michael appealed to the district court, and it affirmed the judgment of the bankruptcy court. We hold that these courts erred in concluding that the state court jury's slander of title findings preclusively established that Michael acted "willfully" within the meaning of 11 U.S.C. § 523(a)(6) because the jury's verdict could have been based on Michael's negligence. Accordingly, we reverse the judgment of the district court and remand to the bankruptcy court for a determination of whether Michael's conduct constitutes a "willful and malicious injury" to the Gerards.

## I. Background

In 2007, Michael Gerard sought to purchase a vacant parcel of real property located on Lake Michigan in Ozaukee County, Wisconsin (the "lot"), but he needed help with the financing so he turned to his brother Kevin Gerard, and Kevin's wife, Margaret (the "Gerards"). In November 2007, the Gerards purchased the lot, and by oral agreement the parties agreed that Michael would cover the expenses, make payments, and ultimately purchase the lot outright. As time went by, a dispute arose between Michael and the Gerards. After some fruitless negotiation, they concluded that Michael would not be financially able to purchase the lot from them, so they put it up for sale. In September 2008, Kevin sent e-mails and a letter to Michael offering to reimburse him $54,049.10 for the funds Michael had expended in connection with the lot. They also directed Michael to stop tampering with the Gerards' "For Sale" signs posted on it. Michael did not accept Kevin's offer; instead, on September 26, 2008, he recorded a "Memorandum of Interest" (the "lien") in the land records of Ozaukee County. Although Michael only owned about a 5% interest in the lot,

the lien he recorded stated that the Gerards "acquired title for convenience only."

In 2009, after some sale price reductions failed to attract a buyer, the Gerards sued Michael in Ozaukee County Circuit Court seeking a declaration of quiet title, slander of title, partition, and breach of contract. Michael's theory at trial was that he was legally privileged to protect his approximately 5% equitable and beneficial interest in the lot, and that by recording the lien, he did not prevent any potential purchasers from buying it. Michael testified that the lien caused no damage to the market for the lot because

> it's always possible for someone to buy the lot. That's … the whole purpose of this lien so that the public can see [that] someone else has an interest in this lot. And if they really, you know, want to do their homework, if they really like the lot, they can call and say, there's the attorney's name on there. They can say, what does your client want to remove this lien and give me a figure, offer a fair market value, that's the whole purpose of the process.

Thus, the Gerards' theory at trial was that Michael's conduct prior to and culminating in his recording of the lien was done for the purpose of slandering their title and to interfere with their ability to market and sell the lot. The Gerards' theory was bolstered by Michael's own testimony at trial, where he stated that:

> [N]o matter how much [Kevin] drops the price, no one's going to put in an offer as long as there's a lien on it. So he can lower the price and make it

like he's trying to sell the property, but he knows
no one's going to put an offer as long as the title is
clouded so you can't really give it much weight.

When asked if "that's because [he] slapped this [lien] on the title, right?," Michael responded "Yeah. That's right." Michael also admitted during his testimony that prior to recording the lien, on at least two occasions he went to the lot and physically tore down the Gerards' "For Sale" sign.

After closing arguments, the jury was presented with an instruction based on Wis. Stat. § 706.13(1), which defines the intentional tort of slander of title as follows:

any person who submits for filing, entering in the judgment and lien docket or recording, any lien, claim of lien, lis pendens, writ of attachment, financing statement or any other instrument relating to a security interest in or the title to real or personal property, and who knows or should have known that the contents or any part of the contents of the instrument are false, a sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused by the filing, entering or recording.

The Special Verdict returned by the jury evinces that it believed the Gerards' trial theory over Michael's. The material questions and answers that the jury returned read as follows:

1. Did Michael Gerard cause the recording of the Memorandum of Interest In Real Estate against Lot 3 with the

Ozaukee County Register of Deeds Office (hereinafter "Memorandum")?

ANSWER (Yes or No): YES

2. Did Michael Gerard know, or should he have known, the contents, or a part of the contents, of the Memorandum were false, a sham, or frivolous?

ANSWER (Yes or No): YES

3. Did Michael Gerard have a reasonable ground for believing the truth of all of the contents of the memorandum?

ANSWER (Yes or No): NO

***

7. Were Kevin Gerard and Margaret Gerard deprived of a market which would have been available to them if the Memorandum had not been recorded?

ANSWER (Yes or No): YES

On the breach of contract claim, the jury found that Michael had an agreement with the Gerards to purchase the lot and to reimburse their out-of-pocket costs, and that Michael breached that agreement. The jury then returned a Special Verdict awarding damages to the Gerards in the amount of $280,000. The judge also imposed an additional $1,000 award of punitive damages pursuant to Wis. Stat. § 706.13(1). On December 9, 2011, an interlocutory judgment in the amount of $281,000 was entered for the Gerards against Michael.

In 2012, Michael filed a petition for bankruptcy under Chapter 11. The Gerards responded by initiating this adversary

proceeding in bankruptcy court to determine whether the interlocutory judgment was precluded from discharge under 11 U.S.C. § 523(a)(6) of the bankruptcy code. Section 523(a)(6) provides that a "willful and malicious injury by the debtor to another entity or to the property of another entity" is precluded from discharge. The Gerards then filed a motion for summary judgment contending that the Ozaukee County Circuit Court already decided that the injury was willful and malicious and its decision should be given preclusive effect. The bankruptcy court concluded that the issue was preclusively decided and entered judgment for the Gerards. Michael appealed to the district court, and it affirmed the judgment of the bankruptcy court. This appeal followed.

Following oral argument, we learned that an appeal of the final judgment entered by the Ozaukee County Circuit Court in July 2014 was pending in the Wisconsin Court of Appeals. We then ordered supplemental briefing on the issue of our jurisdiction in light of this ongoing state court appeal. After the benefit of supplemental briefing, we are confident that we have jurisdiction over the underlying interlocutory judgment adjudicated by the bankruptcy court. *See* Wis. Stat. § 806.01(2). Furthermore, the ongoing state court appeal does not prevent us from resolving the merits of this case now because a Wisconsin judgment has preclusive effects even while it is on appeal. *See Virnich v. Vorwald*, 664 F.3d 206, 216 (7th Cir. 2011); *accord*, *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013). Thus, we proceed to the merits.

## II. Analysis

On appeal, Michael argues that the courts below incorrectly applied issue preclusion under Wisconsin law by granting (and then affirming) the Gerards' summary judgment motion. He argues that the Special Verdict does not support the conclusion that he committed "willful and malicious injury" causing the $281,000 Ozaukee County Circuit Court's interlocutory judgment to be precluded from discharge under 11 U.S.C. § 523(a)(6). "We review conclusions of law made by a bankruptcy court and affirmed by a district court *de novo.*" *Niedert v. Rieger,* 200 F.3d 522, 525 (7th Cir. 1999).

As noted above, § 523(a)(6) provides that "this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." In other words, "[u]nder § 523(a)(6), a debtor's debt may not be discharged if he willfully and maliciously injured the plaintiff or the plaintiff's property." *Gambino v. Koonce,* 757 F.3d 604, 607 (7th Cir. 2014). A plaintiff-creditor seeking to establish nondischargeability under § 523(a) must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). However, rather than prove the nondischargeability of the debt in the bankruptcy court, a creditor may invoke issue preclusion to avoid future litigation of the elements necessary to meet a § 523(a) exception. *Id*. at 285 n.11.

We recently had the occasion to describe the intersection of Wisconsin issue preclusion law and 11 U.S.C. § 523(a)(6) in some detail. *See First Weber Group, Inc. v. Horsfall,* 738 F.3d 767, 772–73 (7th Cir. 2013). There, we explained that

> [i]n Wisconsin (as in most states), the question
> whether issue preclusion applies depends on two
> criteria. The first (the "actually litigated step")
> requires "that the question of fact or law that is
> sought to be precluded actually must have been
> litigated in a previous action and [have been] neces-
> sary to the judgment." *Mrozek v. Intra Fin. Corp.,* 281
> Wis.2d 448, 699 N.W.2d 54, 61 (2005). The second
> (the "fundamental fairness step") requires the court
> to "determine whether it is fundamentally fair to
> employ issue preclusion given the circumstances of
> the particular case at hand." *Id.*

*Id.* at 773. If these standards are satisfied, a bankruptcy court
cannot revisit the issue because the debt is precluded from
discharge. However, if the jury's findings are inconclusive or
were not necessary to the state court judgment, then issue
preclusion does not apply, in which case the bankruptcy court
must determine whether or not the debt is the result of willful
and malicious conduct.

In this case, the jury instructions did not ask the jury
whether Michael's conduct was "willful and malicious."
Although we have yet to consider whether the statutory
"willful and malicious" language must be used in the state
court proceedings for the judgment to have preclusive effect,
the Second Circuit addressed this question in *Ball v. A.O. Smith
Corp.,* 451 F.3d 66 (2d Cir. 2006). In *Ball,* the Second Circuit held
that state court proceedings could have preclusive effect even
where the jury was not charged to find liability for "willful and
malicious" conduct, so long as the verdict satisfied § 523(a)(6)'s

definitions. *Id.* at 69–71. We agree that *Ball*'s reasoning is sound and conclude that the failure of the statutory text of § 523(a)(6) to appear in the state court proceedings does not bar the application of issue preclusion. Thus, that the jury in the underlying state court proceedings did not find that Michael had acted "willfully and maliciously" does not bar issue preclusion. Rather, we must assess whether the jury's findings satisfy the "willful and malicious" standard within the meaning of § 523(a)(6).

We addressed the meaning of the phrase "willful and malicious injury" in *Horsfall*. There we stated that willfulness requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Horsfall,* 738 F.3d at 774 (quoting *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998)) (emphasis omitted). We further explained that willfulness is judged by an objective standard: it "can be found either if the 'debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury.'" *Id.* (quoting *Bukowski v. Patel,* 266 B.R. 838, 844 (E.D. Wis. 2001)). The question is whether the jury's verdict in the Wisconsin state trial court established that this standard was met.

While the Gerards obtained a verdict in their favor on both slander of title and breach of contract theories, they base their nondischargeability argument in Special Verdict answers 1, 2, 3, and 7, which only implicate slander of title. The elements of statutory slander of title are "[a] knowingly false, sham or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or recorded which

impairs title is actionable in damages." *Kensington Dev. Corp. v. Israel,* 142 Wis.2d 894, 419 N.W.2d 241, 244 (1988).

The bankruptcy court concluded that jury Special Verdict Nos. 1, 2, and 7 proved that Michael acted "willfully" because the jury's answer to Question 1 "shows that Michael committed an intentional act by recording the Memorandum." *In re Gerard*, 482 B.R. 265, 271 (Bankr. E.D. Wis. 2012). And the bankruptcy court opined that "by answering 'Yes' to questions 2 and 7, it is apparent that the jury did consider Michael's knowledge and intent in recording the memorandum." *Id.* The district court reached the similar but not identical conclusion that the jury's answers in Jury Verdict Nos. 1, 2, and 3 "establish that Michael acted intentionally in recording the Memorandum of Interest." *Gerard v. Gerard,* 2014 WL 461182, *10 (E.D. Wis., Feb. 5, 2014).

However, the bankruptcy and district courts' reasoning failed to recognize the fact that the Special Verdict form allowed the jury to respond affirmatively based on *either* intentional *or* negligent conduct. Specifically, Question 2 asked: "Did Michael Gerard know, *or should he have known*, the contents, or a part of the contents, of the Memorandum were false, a sham, or frivolous?" (emphasis added). And Question 3 asked whether Michael had "reasonable ground" for believing the truth of the contents of the lien. Our decision in *Horsfall* teaches that one must act with the specific intent to cause a certain result in order to prove willfulness. 738 F.3d at 774. Because the jury's verdict could have been based on Michael's negligence, the lower courts erred by affording the state court judgment preclusive effect. *See Wheeler v. Laudani,* 783 F.2d 610,

615 (6th Cir. 1986) (reversing preclusive effect of libel judgment because it was imposed based on "knowledge of its falsity *or* in reckless disregard of whether it was false" when the latter conduct did not rise to the level of "willful and malicious injury"). Of course, this conclusion does not mean that the state court's interlocutory judgment is necessarily dischargeable. With the exception of the findings of fact memorialized on the Special Verdict, the trial record is devoid of any evidence that Michael acted negligently. Still, the Special Verdict is ambiguous on that issue, so we are unable to afford this finding preclusive effect. Accordingly, we must remand this case to the bankruptcy court for it to decide whether Michael's slander of title was "willful and malicious" within the meaning of § 523(a)(6).

### III. Conclusion

The district court and the bankruptcy court erred in holding the state court jury's slander of title findings preclusively established that Michael acted "willfully" within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, the interlocutory judgment of the district court is REVERSED and this case is REMANDED to the bankruptcy court for a determination of whether Michael's conduct constitutes a "willful and malicious injury" to the Gerards. On remand, counsel for the parties are instructed to provide the bankruptcy court with an update on the status of the ongoing state court appeal.