In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-1895

IN RE:

EDWARD L. CALVERT,

*Debtor-Appellee.*

APPEAL OF: NATIONAL LABOR RELATIONS BOARD

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-00161-SEB-MJD — **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 8, 2018 — DECIDED JANUARY 22, 2019

Before EASTERBROOK and SYKES, *Circuit Judges*, and
BUCKLO, *District Judge*.[*]

SYKES, *Circuit Judge*. Edward Calvert was the sole owner
and president of E.L.C. Electric, Inc., an electrical contracting
company. After a labor organization unsuccessfully cam-
paigned to unionize his company's workforce, Calvert laid
off most of E.L.C. Electric's rank-and-file electricians, which
effectively prevented future unionization attempts. The

---

[*] Of the Northern District of Illinois, sitting by designation.

National Labor Relations Board ("NLRB") determined that the company violated the National Labor Relations Act ("NLRA"), which prohibits discrimination against workers for exercising their statutory rights. *See* 29 U.S.C. § 158(a)(3). The Board ordered E.L.C. Electric to compensate the electricians with backpay.

Calvert tried to avoid the order by shifting his company's operations to two new corporate entities. He didn't succeed. The NLRB discovered Calvert's plan and held him personally responsible for the backpay award. Facing more than $400,000 in liability, Calvert filed for Chapter 7 bankruptcy.

The Board challenged Calvert's attempt to discharge the backpay liability, arguing that the debt was not dischargeable because it arose from a willful and malicious injury. *See* 11 U.S.C. § 523(a)(6). Calvert conceded the willfulness element but denied that he acted maliciously. The Board countered by asserting that Calvert was collaterally estopped from litigating the malice issue, but it made little effort to establish the elements of the doctrine. Indeed, the Board did not identify any specific findings in the NLRB ruling that should be given preclusive effect. The bankruptcy judge declined to apply collateral estoppel and instead held a bench trial on the issue of malice. Based on the trial evidence, the judge found that Calvert had not acted maliciously and thus ruled that the debt was not exempt from discharge.

On appeal to the district court, the Board again raised collateral estoppel but failed to analyze the elements of the doctrine or provide citations to the relevant parts of the agency record. The district judge noted these deficiencies and affirmed.

We likewise affirm. The Board does not challenge the evidence at trial or the bankruptcy judge's factual findings. Instead it stakes its entire case on collateral estoppel. But it persists in providing only a generalized discussion of preclusion doctrine that is untethered to specific findings in the NLRB proceeding. That's not enough to establish that Calvert is precluded from contesting the malice issue under § 523(a)(6).

## I. Background

In July 2002 the International Brotherhood of Electrical Workers, Local 481, campaigned to become the certified bargaining representative for E.L.C. Electric's rank-and-file electricians. Calvert launched his own campaign to oppose the Union's efforts. When the Union lost, it filed an objection with the NLRB, demanding a new vote on the ground that E.L.C. Electric had unlawfully meddled in the election.

While this objection was pending, E.L.C. Electric promoted two of its bargaining-unit electricians and fired the remaining sixteen, leaving the Union without a rank-and-file workforce at the company to unionize. The Union filed a second charge with the NLRB alleging that E.L.C. Electric unlawfully fired the electricians for exercising their right to unionize.

After a trial in April 2004, an administrative law judge ruled that E.L.C. Electric violated sections 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1), (3). The NLRB affirmed the ALJ's ruling a year later. *E.L.C. Elec., Inc.*, 344 N.L.R.B. 1200 (2005). It determined that E.L.C. Electric violated § 158(a)(3) of the NLRA by firing the electricians to prevent them from

organizing. The NLRB ordered the company to compensate the electricians with backpay.

E.L.C. Electric never paid the award. It ceased operations in March 2006. The ALJ initiated supplemental proceedings and concluded that Calvert shuttered the firm to avoid paying the electricians. The judge pierced the corporate veil and held Calvert personally liable for $437,427 in backpay and interest. The NLRB adopted the judge's findings and conclusions, *E.L.C. Elec., Inc.*, 359 N.L.R.B. 255 (2012), and we summarily enforced the order in July 2013.

Calvert filed a Chapter 7 bankruptcy petition five months later. *See* 11 U.S.C. § 727. In response the Board challenged Calvert's attempt to discharge the backpay debt. It raised multiple arguments but only one remains relevant. The Board claimed that the debt was exempt from discharge because it arose from a "willful and malicious injury by the debtor to another entity." § 523(a)(6). Calvert did not dispute that he acted willfully, but he denied that he acted maliciously. The Board sought summary judgment, arguing that the agency's finding of liability under § 158(a)(3) of the NLRA precluded Calvert from litigating whether the debt was exempt from discharge under § 523(a)(6) of the Bankruptcy Code. The bankruptcy judge denied the motion, reasoning that § 158(a)(3) and § 523(a)(6) apply different legal standards and that the NLRB proceedings lacked a "sufficient level of 'specific findings'" to be given preclusive effect on the question whether the debt was exempt from discharge—more particularly, whether Calvert had acted with malice.

The matter proceeded to a bench trial, and Calvert testified that he laid off his employees to save money by hiring

independent contractors. The Board offered no evidence to refute this explanation. The judge credited Calvert's testimony and found that the Board failed to prove that he acted maliciously. Based on these findings, the judge rejected the Board's contention that the backpay debt was exempt from discharge.

The Board appealed to the district court, once again raising issue preclusion. The district judge affirmed. She rejected the preclusion argument, noting that the Board had failed to analyze the elements of collateral estoppel or provide citations to the relevant parts of the agency record that might support preclusion. On the merits the judge held that the bankruptcy judge's factual findings were not clearly erroneous.

## II. Discussion

We review the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). The Bankruptcy Code does not permit the discharge of debts incurred because of "willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). By its terms, this exception to the general discharge rule requires "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). The Board has the burden of establishing each of these elements by a preponderance of the evidence. *Id.*

There's no dispute about injury, causation, or willfulness. The sole question concerns malice. It's the Board's burden to prove that Calvert "acted 'in conscious disregard of [his] duties or without just cause or excuse.'" *Id.* (quoting *In re*

*Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)) (alteration in original)*.* The Board contends that the NLRB adjudication collaterally estopped Calvert from contesting the malice issue in the § 523(a)(6) litigation.

Calvert responds that the Board cannot now rely on collateral estoppel because it did not fully develop the argument in the bankruptcy and district courts. It's true that the Board's preclusion argument was overly generalized and incomplete, as the district judge expressly noted. But the agency said enough to overcome a forfeiture, which is not "an overly technical appellate hurdle." *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010). While not forfeited, the argument is neither adequately nor correctly developed in this court—even after the district judge put the Board on clear notice of the defects in its briefing—and that defeats the Board's argument on appeal.

Issue preclusion prevents a party from relitigating issues that were resolved in a prior legal action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). The party invoking preclusion must show that

> (1) the issue sought to be precluded [was] the same as that involved in the prior litigation, (2) the issue [was] actually litigated, (3) the determination of the issue [was] essential to the final judgment, and (4) the party against whom estoppel is invoked [was] fully represented in the prior action.

*Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

To determine whether the NLRB proceeding "involved" the same issue as the bankruptcy proceeding, the first step is to "determine with precision what matters actually were decided" in the labor proceeding. 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4417, at 459–60 (3d ed. 2016). This determination must be grounded in the actual findings and analysis in the ALJ's ruling. *See, e.g.*, *In re Davis*, 638 F.3d 549, 554 (7th Cir. 2011) (defining the issue "[i]n the context of the entire [prior] court opinion"); *H-D Mich., Inc.*, 496 F.3d at 760–61 (defining the issue with reference to specific statements in the prior opinion).

It's the Board's job to identify the actual findings in the NLRB proceeding that it claims are entitled to preclusive effect, and it must then map those findings onto the standard for malice under § 523(a)(6). *Compare First Weber Grp.*, 738 F.3d at 775 (finding preclusion on the issue of malice because the prior action's analysis "substantially mirrored" the standard under § 523(a)(6)), *with Gerard v. Gerard*, 780 F.3d 806, 810–11 (7th Cir. 2015) (holding that a slander-of-title verdict did not preclude litigation over whether the underlying injury was "willful" under § 523(a)(6) because the jury instructions for the verdict required only negligence).

The Board has not satisfied its burden. It has not identified the specific issues that were actually decided in the labor proceeding, much less mapped the ALJ's findings onto the elements of § 523(a)(6). Instead, the Board's argument for collateral estoppel is stated at a high level of generality. It argues that § 158(a)(3) and § 523(a)(6) ask the same general question: "Why did Calvert discharge his employees, or, what was his intent in doing so?" Like the lower courts, we

cannot assess the applicability of issue preclusion without a more precise analysis of what was actually decided in the labor proceeding as a legal and factual matter. *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

The Board maintains that preclusion applies as a categorical matter because § 158(a)(3) prohibits discrimination based on antiunion animus. As the Board sees it, a factual finding that Calvert acted with malice *necessarily* nests within the agency's imposition of § 158(a)(3) liability. But for preclusion to apply, the Board must establish that the issue of discriminatory intent under § 158(a)(3) of the NLRA is the same as the issue of malice under § 523(a)(6) of the Bankruptcy Code *and also* that the issue of Calvert's intent was *actually decided* in the agency proceeding. It has not done so. To repeat, the Board has not grounded its argument in specific findings entered in the NLRB proceeding, much less applied those findings to the malice standard under § 523(a)(6). Moreover, as the bankruptcy judge noted, the agency's determination lacks specificity on the issue of Calvert's intent. The ALJ found only that the NLRB established a prima facie case under § 158(a)(3) that E.L.C. Electric failed to rebut.

In short, the Board has not met its burden to establish that the prior agency adjudication involved and actually decided the issue of whether Calvert acted with malice, which is fatal to its preclusion argument. And because the Board does not challenge the bankruptcy judge's factual finding that Calvert did not act with malice, its claim that the

backpay debt is exempt from discharge under § 523(a)(6) necessarily fails. Accordingly, the judgment below is

AFFIRMED.

BUCKLO, *District Judge*, dissenting. I respectfully dissent. The question before the bankruptcy court was whether Calvert acted maliciously, *i.e.* "without just cause or excuse," when he laid off nearly all of his rank-and-file workforce in violation of the National Labor Relations Act. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). In adjudicating the underlying 29 U.S.C. § 158(a)(3) discrimination claim in the NLRB's favor, the ALJ conducted an analysis that "substantially mirrored" the malice inquiry under 11 U.S.C. § 523(a)(6), *id.* at 775, and determined that Calvert's conduct was unsupported by any lawful purpose. That finding should have been given preclusive effect in the bankruptcy court.

My colleagues rule against the NLRB on the ground that its preclusion analysis is overly general. In their view, the Board "has not grounded its [preclusion] argument in specific findings" or established that "the issue of Calvert's intent was *actually decided* in the agency proceeding." But the NLRB points to several findings that the ALJ made regarding Calvert's intent. First, the Board cites the ALJ's determination that Calvert laid off his employees "*because of* their union activities, to wit, to avoid having further NLRB proceedings and the risk that the Union might ultimately be certified as the collective-bargaining representative[] of [his] employees." (Emphasis added.) The phrase "because of" tells us that the ALJ *actually decided* the issue of Calvert's intent. Moreover, the ALJ's determination that Calvert was motivated by a discriminatory purpose was essential to the ALJ's ultimate holding. *See SCA Tissue N. Am. LLC v. N.L.R.B.*, 371 F.3d 983, 988 (7th Cir. 2004) (proof of discrimination requires evidence that "employer acted because of

anti-union animus"); *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 290 (7th Cir. 2001) (employer's unlawful discriminatory motive is the "critical question" in a § 158(a)(3) proceeding); *Van Vlerah Mech., Inc. v. N.L.R.B.*, 130 F.3d 1258, 1263 (7th Cir. 1997) ("In evaluating [§ 158(a)(3) allegations], the Board must determine the employer's motivation in taking a particular action.").

Second, the Board identifies the ALJ's determination that Calvert did not establish a "legitimate business reason" for his conduct. Notwithstanding the ALJ's finding that Calvert acted with discriminatory intent, Calvert could have avoided liability under § 158(a)(3) by showing that he had a legitimate business reason for his actions. *See N.L.R.B. v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1266 (7th Cir. 1987) ("The employer … may avoid liability by showing that his actions would have been the same 'regardless of his forbidden motive.'"). Calvert attempted to make such a showing, offering three different explanations for the layoffs, but the ALJ rejected all of them. Indeed, the ALJ found Calvert's "shifting" justifications to be "wholly unreliable" and concluded that they "utterly failed to rebut" the Board's evidence of "antiunion animus." The upshot of the ALJ's burden-shifting analysis was a conclusive finding on the issue of Calvert's intent: specifically, that Calvert laid off his workforce based on "antiunion animus" rather than "legitimate business considerations."

The majority's contrary view nods to Calvert's argument that because § 158(a)(3) does not require the NLRB to prove affirmatively that Calvert lacked a legitimate business reason for his conduct, the ALJ did not conclusively decide the issue of Calvert's intent. *See supra* at 8 ("The ALJ found

only that the NLRB established a prima facie case under § 158(a)(3) that E.L.C. Electric failed to rebut."). That interpretation fails to appreciate that in the labor proceedings, the NLRB at all times carried the burden of establishing that Calvert discharged his employees "based in whole or in part on antiunion animus." *N.L.R.B. v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983), *abrogated in non-relevant part by Dir., Office of Workers' Comp. Programs, Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267, 276–78 (1994)). Moreover, it overlooks the text of the ALJ's decision, which, in a paragraph that opens, "[s]pecifically as to why [Calvert] made the decision …" the ALJ concluded that Calvert's decision to lay off his workers "was motivated by … antiunion animus."

To establish issue preclusion, the NLRB needed to show that the ALJ's analysis of Calvert's intent "substantially mirrored" the standard for malice under § 523(a)(6). *Horsfall*, 738 F.3d at 775. In fact, the Board had a tougher row to hoe to prevail in the labor proceedings than it did before the bankruptcy court, since it had not only to prove Calvert's impermissible motive, but also to withstand Calvert's affirmative defense of a legitimate business reason. Regardless of who bore the burden on which issue, the universe of evidence presented to the ALJ had to persuade him that a prohibited reason—not a legitimate one—motivated Calvert's actions. And as the text of his decision makes clear, persuade him it did.

The majority faults the Board for failing to perform a more exacting exercise to "map[] the ALJ's findings onto the elements of § 523(a)(6)." In my view, no heavy lifting was required to illustrate how the ALJ's twin findings that Calvert acted with a prohibited motive and without a legiti-

mate business reason satisfy the malice inquiry under § 523(a)(6). Malice is established by proof that a debtor acted "without just cause or excuse." *Horsfall*, 738 F.3d at 774. The Board proved to the ALJ, notwithstanding Calvert's contrary testimony, that Calvert acted with antiunion animus—a prohibited motive. It is not clear to me what additional analytical dots the Board needed to connect to show that Calvert's actions lacked just cause or excuse.

Bankruptcy courts in this circuit and elsewhere have held that an agency or state court finding that the debtor acted with discriminatory intent and without just cause satisfies the malice standard under § 523(a)(6). *In re Fogerty*, 204 B.R. 956, 962 (Bankr. N.D. Ill. 1996) (NLRB's conclusion that the debtor wrongfully terminated two employees in violation of § 158(a)(3) decided the issue of malice because it was based on the determination that the debtor lacked just cause to discharge the employees and terminated them solely because of their protected activities); *In re Goldberg*, 487 B.R. 112, 129 (Bankr. E.D.N.Y. 2013) (applying collateral estoppel to state court's factual findings of intentional discrimination, reasoning that declining to do so would "sanction the view that there exists some 'just cause or excuse' for discrimination … where the state court has already found otherwise").

When the ALJ held that Calvert discriminated against his employees in violation of § 158(a)(3) and held him liable for that violation, he resolved the question of whether Calvert had just cause for his actions. Instead of giving the ALJ's findings about Calvert's intent the preclusive effect they were due, the bankruptcy court offered Calvert another bite at the apple, affording him an opportunity to relitigate his purported justifications for violating federal law. But the

ALJ's analysis left no room for finding Calvert's conduct justified. Accordingly, I would hold that the bankruptcy court was precluded from reopening an inquiry into Calvert's intent.