# Supreme Court of Texas

No. 23-0634

First Sabrepoint Capital Management, L.P., Sabrepoint Capital
Partners, L.P., Sabrepoint Capital Participation, L.P.,
George Baxter, and Donald Marchiony,

*Petitioners*,

v.

Farmland Partners Inc.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 16, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

A Colorado real estate investment trust sued a Texas hedge fund
and its employees for damages caused by an allegedly defamatory article
published under a pseudonym. After those claims were dismissed in
Colorado federal court for lack of personal jurisdiction, the trust sued in
Texas state court. The defendants did not challenge personal
jurisdiction here but instead moved to dismiss under the Texas Citizens
Participation Act (TCPA) and for summary judgment based on collateral

estoppel. The trial court granted both motions, but the court of appeals reversed, holding (1) the trial court lacked authority to grant the TCPA motion after it was overruled by operation of law and (2) the defendants failed to conclusively establish that collateral estoppel barred the claims. We agree with the court of appeals that the defendants were not entitled to summary judgment on their collateral estoppel defense. But the court of appeals erred in holding that the order granting the TCPA motion was void. We therefore reverse and remand for the court of appeals to address the TCPA motion on its merits.

## I. Background

First Sabrepoint Capital Management, L.P. is a hedge fund with its principal place of business in Dallas. In February 2018, First Sabrepoint entered into an agreement with QKM, L.L.C., an independent advisory firm owned by David Quinton Mathews. In exchange for a $9,500 monthly fee, QKM agreed to conduct investment research and advisory services for First Sabrepoint.

Several months later, a senior analyst at First Sabrepoint, Donald Marchiony, sent Mathews an email about Farmland Partners Inc. (FPI). FPI is a publicly traded real estate investment trust that acquires agricultural land across North America and is headquartered in Colorado. Marchiony's email attached a slide deck with information on FPI's value and business operations. He described the attachment as a "new idea" on which he and Mathews could collaborate "if there's something juicy." Marchiony told Mathews that First Sabrepoint held a

2

relatively small short position[1] on FPI's stock but "unless we have a catalyst [we] probably won't do too much higher than that."

Mathews began researching FPI's financial condition and communicated his findings to additional First Sabrepoint employees, including George Baxter, First Sabrepoint's CEO. Mathews eventually wrote an article about FPI under his pseudonym "Rota Fortunae" for the financial blog "Seeking Alpha." The article painted a bleak picture of FPI's business, noting it faced a "significant risk of insolvency."

Shortly before the article was published, Mathews hired a Dallas attorney, Matthew Mitzner, to send a letter informing FPI of the article's impending publication and offering FPI an opportunity to comment. FPI did not respond within Mitzner's 24-hour deadline, and the article was published on Seeking Alpha the following day. On the day the article was published, FPI issued a press release denying some of the article's statements. Yet within one day of the article's publication, FPI's stock price dropped 39%. FPI released another public statement rebutting the article's assertions, including that the company was nearly insolvent.

Later that month, FPI sued Mathews—identified initially only by his pseudonym—in Colorado state court. FPI alleged that the Seeking Alpha article contained false statements and was published as part of a

---

[1] "Shorting" a stock is a technique in which an investor, expecting a stock price to decline, borrows and then sells shares of a stock intending to purchase them later for a lower price. *Key Points About Regulation SHO*, U.S. SEC. & EXCH. COMM'N (May 31, 2022), https://www.sec.gov/investor/pubs/regsho.htm?os=i&ref=app.

3

"short and distort" scheme[2] in which false information is disseminated to generate profits for short sellers. The suit was removed, and FPI amended its complaint to add First Sabrepoint, Baxter, and Marchiony as defendants, alleging that they conspired with Mathews to manipulate securities markets to help First Sabrepoint profit from its short position on FPI's stock. FPI alleged it and its shareholders suffered financial and reputational harm as a result, including the loss of prospective business relations.

First Sabrepoint, Baxter, and Marchiony moved to dismiss under Federal Rule of Civil Procedure 12(b)(2). In response, FPI contended that the defendants had purposefully directed their activities toward Colorado by publishing Mathews's article and by sending Mitzner's letter to FPI in Colorado two days before publication. The district court concluded neither of these acts supported the exercise of personal jurisdiction and granted the Rule 12(b)(2) motion. *Farmland Partners Inc. v. Rota Fortunae*, No. 1:18-CV-02351-RBJ, 2021 WL 765362, at *7, *12 (D. Colo. Feb. 26, 2021). In explaining its reasoning, the district court noted that although FPI presented evidence that the defendants knew Mathews previously had published articles under the pseudonym "Rota Fortunae" on Seeking Alpha, there was no evidence that the First Sabrepoint defendants knew about this article "until after it was published." *Id.* at *6. The court concluded that the evidence at most

---

[2] A "short and distort" scheme is intended to cause a selloff to benefit short sellers. It is accomplished by spreading false or misleading information about a publicly traded company. Matthew B. Schneider, *Coming Up Short: Using Short-Seller Reports to Plead Loss Causation in Securities Class Actions*, 124 COLUM. L. REV. 1485, 1505 (2024).

4

supported "a reasonable inference that Sabrepoint knew . . . it was *possible* Quinton Mathews would publish an article about FPI." *Id.* at *7.[3] Yet, in its view, this was not enough to establish purposeful availment:

> Sabrepoint's knowledge that Mr. Mathews might publish an article about FPI is insufficient to establish that *Sabrepoint* purposely directed its activities at Colorado. In sum, there is nothing in the record to support an inference that the Seeking Alpha article is attributable to Sabrepoint. Thus, the article on its own cannot establish that Sabrepoint purposely directed its activity at [Colorado].

*Id.* The court also concluded there was no evidence that the First Sabrepoint defendants had any involvement with hiring Mitzner or instructing him to send the letter to FPI. *Id.* at *7–8. The court further rejected FPI's arguments that personal jurisdiction was proper under an agency or conspiracy theory. *Id.* at *8–12.

Following dismissal in Colorado, FPI sued in Texas state court, asserting similar claims against First Sabrepoint, Baxter, and Marchiony. FPI also added two new defendants: Sabrepoint Capital Partners, LP (a separate fund that FPI alleges acted through First Sabrepoint) and Sabrepoint Capital Participation, LP (the general partner of Sabrepoint Capital Partners).[4] Unless clarity requires otherwise, we will refer to all five defendants collectively as

---

[3] The Colorado court's order used "Sabrepoint" to refer collectively to all three defendants: First Sabrepoint, Baxter, and Marchiony. *Id.* at *1.

[4] FPI earlier sued in the Northern District of Texas, but that action was dismissed because the presence of Sabrepoint Capital Partners defeated diversity jurisdiction.

5

"Sabrepoint." FPI alleged six claims against Sabrepoint: (1) intentional and tortious interference with prospective business relations/advantage and/or negligence; (2) deceptive trade practice in violation of the Colorado Consumer Protection Act; (3) civil conspiracy; (4) unjust enrichment/money had and received; (5) disparagement/business disparagement; and (6) defamation.

Sabrepoint answered and asserted collateral estoppel as an affirmative defense. It then moved for summary judgment on that basis, arguing that the Texas suit was based on the same underlying factual issue decided in Sabrepoint's favor by the Colorado court: Sabrepoint's "lack of involvement with the allegedly defamatory article." FPI responded that collateral estoppel was inapplicable because the Colorado federal court's dismissal order adjudicated a jurisdictional question, not the merits. FPI also argued that the Colorado order did not address all the claims at issue in Texas and its analysis of Sabrepoint's potential ties to the article was not "essential" to the Colorado judgment.

In addition to seeking summary judgment, Sabrepoint moved to dismiss FPI's claims under the TCPA. It argued that the TCPA applied to those claims and FPI failed to establish a prima facie case by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a) ("If a legal action is based on or is in response to a party's exercise of the right of free speech, . . . that party may file a motion to dismiss the legal action."), .005(c) (prohibiting a court from dismissing a legal action if the claimant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). Sabrepoint later

6

supplemented its TCPA motion to add another ground for dismissal: that it established its collateral estoppel defense as a matter of law. *See id.* § 27.005(d). The court heard the TCPA motion on November 12, 2021, but did not rule within the thirty-day deadline the statute prescribes. *See id.* § 27.005(a) (requiring the trial court to rule within thirty days after the hearing); *id.* § 27.008(a) (providing that the motion is denied by operation of law if the trial court does not rule within that time period). Rather, on December 17, thirty-five days after the hearing on the TCPA motion, it granted both the TCPA motion and the motion for summary judgment.

FPI appealed. The court of appeals initially questioned its jurisdiction over the appeal, noting that the December 17 order granting the TCPA motion did not address attorney's fees, *see id.* § 27.009(a)(1) (requiring the court to award a successful movant court costs and reasonable attorney's fees), and therefore may not constitute a final judgment. 703 S.W.3d 123, 129 & n.12 (Tex. App.—Dallas 2023). After the parties briefed the jurisdictional question, the court of appeals concluded the TCPA motion, which was overruled by operation of law thirty days after the hearing, could not be granted thereafter. *Id.* at 129. Having decided that the portion of the order granting the TCPA motion was void, the court of appeals determined it would review only the trial court's grant of summary judgment. *Id.*

Following the court of appeals' order to this effect, the parties limited their briefing and argument to the summary judgment ruling, which was based on collateral estoppel. Sabrepoint argued that the Colorado court's order dismissing FPI's suit determined that Sabrepoint

7

had no involvement at all in the Seeking Alpha article and this determination barred FPI's claims in Texas. The court of appeals disagreed and reversed the trial court's judgment. *Id.* at 136. According to the court of appeals, the Colorado court considered only whether it could exercise personal jurisdiction over Sabrepoint, which was not at issue in this case because personal jurisdiction in Texas is unchallenged. *Id.* at 134–35. Therefore, the issue in the prior case was not the identical issue presented here, and the Colorado judgment was not preclusive. *Id.* Additionally, the court noted that FPI's claims against the two new defendants were never litigated in Colorado, leaving "no possibility of an inconsistent determination of the same ultimate issue." *Id.* at 135. Sabrepoint petitioned for review, which we granted.

## II. The trial court did not commit reversible error by granting the TCPA motion.

The Legislature enacted the TCPA to protect against "retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). The statute's express purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA itself explicitly directs courts to construe the statute "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). When, as here, we consider issues of statutory

8

interpretation, our review is de novo. *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 734 (Tex. 2024).

The TCPA provides for "early dismissal" of claims to which it applies. *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). A defendant may file a motion to dismiss within sixty days after the lawsuit's service. TEX. CIV. PRAC. & REM. CODE § 27.003(b). Discovery is stayed (with limited exceptions), *id.* § 27.003(c), and the trial court must hold a hearing within sixty days after the motion is served, unless there is good cause or the parties agree to an extension, but in no event later than ninety days after service of the motion, *id.* § 27.004(a). The TCPA then imposes a deadline by which the trial court must rule:

> The court must rule on a motion under Section 27.003 not later than the 30th day following the date the hearing on the motion concludes.

*Id.* § 27.005(a). If the court does not rule within thirty days of the hearing, "the motion is considered to have been denied by operation of law and the moving party may appeal." *Id.* § 27.008(a). We have described this procedure generally as a "special motion for . . . expedited consideration." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015).[5]

This Court recently held that the expiration of the deadline for a trial court to rule on a TCPA motion does not extinguish the court's

---

[5] An appeal from the trial court's order (or failure to rule) is similarly expedited. TEX. CIV. PRAC. & REM. CODE § 27.008(b). The notice of appeal must be filed within twenty days of the trial court's order. *See* TEX. R. APP. P. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed . . . ."); TEX. R. APP. P. 28.1(a) ("[A]ppeals required by statute to be accelerated or expedited . . . are accelerated appeals.").

9

plenary power to later reconsider that ruling. In *In re Panchakarla*, the trial court granted a TCPA motion within the thirty-day period following the hearing, dismissing the plaintiff's claims. 602 S.W.3d 536, 538 (Tex. 2020). The plaintiff filed a motion for reconsideration and new trial, which the court granted over two months later, vacating its initial order and denying the TCPA motion. *Id.* at 538–39. We held that the trial court did not abuse its discretion in vacating its order granting the TCPA motion. *Id.* at 541. We noted that "the TCPA is silent about a trial court's authority to reconsider either a timely issued ruling granting a TCPA motion to dismiss or a timely order denying such a motion when no interlocutory appeal is pending." *Id.* at 540. And we observed that this Court has "long recognized that trial courts retain plenary power over their judgments until they become final." *Id.* at 539. As a general matter, a trial court also "retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is [rendered]." *Id.* at 539–40 (alteration in original) (quoting *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993)). We thus concluded that "nothing in the statutory scheme [of the TCPA] prohibits trial courts from vacating their own orders when they otherwise have plenary power to do so." *Id.* at 541.

Consistent with *Panchakarla*, we conclude that the court of appeals erred by declaring void the trial court's order granting Sabrepoint's TCPA motion to dismiss. The trial court's ruling on Sabrepoint's TCPA motion came only five days after the expiration of Section 27.005(a)'s deadline to rule. At that time, no final judgment was in place, and Sabrepoint had not appealed. As we recognized in

10

*Panchakarla*, under those circumstances, nothing in the TCPA extinguished the trial court's plenary power to reconsider the TCPA motion's merits. *Id.*

Sabrepoint does not challenge *Panchakarla*'s holding; instead, it argues that *Panchakarla* is distinguishable because it involved reconsideration of an order that *timely* granted a TCPA motion. We are not persuaded. We see no reason to apply a different rule simply because the initial order in *Panchakarla* was one the trial court expressly made as opposed to one made by operation of law. *Cf.* TEX. R. CIV. P. 329b(e) (providing that trial courts have plenary power to grant a new trial for thirty days after a motion for new trial has been denied "either by a written and signed order or by operation of law"). Nor does it matter that, on reconsideration, the trial court in *Panchakarla* denied the motion, whereas the trial court in this case reconsidered and granted the motion.

The text of the TCPA does not require a different result. The TCPA's command is that courts "must rule" no later than thirty days after the hearing has concluded. TEX. CIV. PRAC. & REM. CODE § 27.005(a). But as we noted in *Panchakarla*, the statute nowhere limits the trial court's authority to revisit that ruling. 602 S.W.3d at 540–41. Instead, the statute provides a simple consequence for a trial court's failure to timely rule: the motion is overruled by operation of law and the movant may appeal. TEX. CIV. PRAC. & REM. CODE § 27.008(a).

We do not suggest that the trial court committed no error by granting the TCPA motion outside Section 27.005(a)'s thirty-day window. But because the trial court's ruling occurred within the time

11

during which Sabrepoint could have appealed the denial of its motion by operation of law and stayed all proceedings, we conclude that any error in failing to rule by the thirty-day deadline was harmless. *See* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . ."); *see also In re J.N.*, 670 S.W.3d 614, 618 (Tex. 2023) ("As a general rule, '[n]o [civil] judgment may be reversed on appeal on the ground that the trial court made an error of law unless' that error was harmful." (alterations in original) (quoting TEX. R. APP. P. 44.1(a))). In granting the motion when it did, the ultimate outcome was the same as if Sabrepoint had filed an interlocutory appeal from the denial by operation of law and succeeded on appeal. Provided the trial court's ruling on the TCPA motion was correct on the merits (an issue we do not decide), granting the motion within the time to appeal from the denial by operation of law did not result in an improper judgment. *See Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 819–20 (Tex. 1980) (explaining that the harmless error rule "establishes a sound and common sense policy of not reversing a judgment unless the error or errors can be said to have contributed in a substantial way to bring about the adverse judgment"); *see also Walker v. Owens*, 492 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that a trial court committed harmless error in granting defendant's motion to dismiss outside of the deadline in Rule of Civil Procedure 91a, as Rule 91a "does not contain any sanction for non-compliance with the forty-five day deadline" despite its mandatory language); *cf. Beavers v.*

*Beavers*, 675 S.W.2d 296, 300 (Tex. App.—Dallas 1984, no writ) (concluding that a trial court's failure to file findings of fact and conclusions of law within prescribed time limits was harmless error).

This conclusion aligns with the TCPA's objective, which is to encourage expedient litigation for parties whose rights the lawsuit threatens. *Lipsky*, 460 S.W.3d at 584. To achieve that end, the Legislature expressly provided for an immediate right to appeal when a TCPA motion is denied by operation of law.[6] TEX. CIV. PRAC. & REM. CODE § 27.008(b). Rather than force a TCPA movant to file a time-consuming interlocutory appeal from a denial by operation of law (and stay all trial court proceedings), judicial economy and the objectives of the TCPA are served by allowing the trial court to reverse that ruling within the window in which the movant could have filed an interlocutory appeal. We hold that, while a trial court errs by granting a TCPA motion after the expiration of Section 27.005(a)'s thirty-day window, the error is harmless and does not warrant reversal if made within the twenty-day period in which the movant could have filed a notice of appeal from the motion's denial by operation of law. *See* TEX. R. APP. P. 44.1(a).

The court of appeals erroneously held that the portion of the trial court's order granting Sabrepoint's TCPA motion to dismiss was void. It therefore did not address the motion's merits. We reverse that portion of the court of appeals' judgment and remand to that court to address in

---

[6] While the TCPA permits an interlocutory appeal from the *denial* of a motion to dismiss, *see* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12), there is no provision for an interlocutory appeal from the *granting* of such a motion.

the first instance the merits of FPI's appeal from the order dismissing its claims under the TCPA, which the court of appeals instructed the parties not to brief.[7]

## III. Summary judgment on collateral estoppel was improper.

While the court of appeals erred by declaring void the trial court's order granting Sabrepoint's TCPA motion, it correctly reversed the trial court's order granting Sabrepoint's motion for summary judgment based on collateral estoppel. Because collateral estoppel is the basis for the summary judgment motion and a basis for the TCPA motion, the doctrine's application to this case will be at issue on remand. Accordingly, in the interest of judicial efficiency, we will address its application here. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015) ("[I]n the interest of judicial economy we also consider [petitioner's] other potentially dispositive issues instead of remanding them to the court of appeals.").

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024) (quoting *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019)). To establish entitlement to summary judgment based on an affirmative defense—like collateral estoppel—the defendant must

---

[7] While FPI's appeal was pending, the trial court signed an order awarding Sabrepoint attorney's fees under the TCPA and stated that this order "resolves disputes of all remaining issues and claims and is final and appealable." FPI amended its notice of appeal to include this order, so there is no question about the court of appeals' jurisdiction over the appeal.

14

conclusively establish each element of its affirmative defense. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021). The nonmovant must then present evidence raising a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We review issues of collateral estoppel de novo because collateral estoppel's application "is a question of law." *Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 557 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Collateral estoppel, also known as issue preclusion, bars parties from relitigating identical issues of fact or law in multiple lawsuits. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *see also Quinney Elec., Inc. v. Kondos Ent., Inc.*, 988 S.W.2d 212, 213 (Tex. 1999) ("[T]he basic function of collateral estoppel [is] to prevent a party from relitigating an issue that the party previously litigated and *lost*."). By focusing on the issues being litigated instead of entire claims, collateral estoppel is "more narrow" in scope than the related doctrine of res judicata or claim preclusion. *Van Dyke*, 697 S.W.2d at 384. Specifically, collateral estoppel prevents the same "ultimate issue of fact" from being litigated in more than one suit. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). In so doing, collateral estoppel promotes judicial efficiency, protects parties from multiple lawsuits, and prevents inconsistent judgments. *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021).

A party must establish several elements to prevail under the doctrine of collateral estoppel.[8] First, the party asserting the defense must show that the issue as to which it seeks to estop relitigation is the identical issue litigated in the other case. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998) (holding that "the issue decided in the first action must be . . . identical to the issue in the pending action" for collateral estoppel to apply); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994) (requiring "proper[] identifi[cation]" of the issue as to which the party seeks to estop relitigation). When, as here, this element is in dispute, courts must carefully analyze the ultimate issues to be proven—i.e., the factual issues and "essential elements of the claims"—being asserted in the different actions. *Ctr. Equities, Inc. v. Tingley*, 106 S.W.3d 143, 153 (Tex. App.—Austin 2003, no pet.); *see also Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 (Tex. 2001) (holding that collateral estoppel bars claims when "the facts necessary to establish [those] claims" are "the same facts" found in a previous case). The party asserting the defense bears the burden to "map" the previous findings onto the claims asserted, demonstrating how the findings and issues actually litigated in the first action will be determinative of the claims asserted in the

---

[8] The elements required to establish collateral estoppel under Texas law mirror those of federal law. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) ("As for whether collateral estoppel—the preclusive effect of the federal case on litigation of issues in the present case—is governed by federal or state law, we have previously concluded that both are the same.").

16

second action. *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019); *see also Trapnell*, 890 S.W.2d at 802 (holding that the defendants "had the burden of pointing out the issue they wished to be estopped").

Next, the party seeking the application of collateral estoppel must demonstrate that the facts in the current suit "were fully and fairly litigated" in the earlier action. *Trapnell*, 890 S.W.2d at 801. To determine this question, we often consider three procedural matters: "(1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991).

Third, a party asserting the defense must establish that the same facts "were essential to the judgment" in the first suit. *Trapnell*, 890 S.W.2d at 801. A fact issue is considered essential and an "ultimate issue" if the factual determinations "are necessary to form the basis of a judgment." *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988).

Lastly, the parties must have been "cast as adversaries in the first action." *Trapnell*, 890 S.W.2d at 801. Mutuality of parties is not necessary, though, as it is only required "that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *see also Trapnell*, 890 S.W.2d at 802 ("[I]t is only necessary that the party against whom the [collateral estoppel] doctrine is asserted was a party or in privity with a party in the first action." (emphasis omitted)).

17

We agree with the court of appeals that Sabrepoint failed to conclusively establish the affirmative defense of collateral estoppel because it did not establish that the fact issue as to which it seeks to estop litigation in Texas is identical to one the Colorado court decided. *See Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 28 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("Collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action."). Sabrepoint needed to establish that the Colorado court's factual determination—that Sabrepoint's alleged conduct related to the Seeking Alpha article was insufficient to amount to *purposeful avalment* in Colorado—is identical to the question posed in the Texas litigation: whether Sabrepoint was sufficiently "involved" in the alleged short-and-distort scheme so as to justify imposing *liability*. *See Johnson & Higgins*, 962 S.W.2d at 523 (holding that collateral estoppel was improper "because the issue decided in [a previous] federal action [wa]s not identical to the issue" litigated in a subsequent state action).

The Colorado court's findings suggest the issues, while related, are distinct. In granting the Rule 12(b)(2) motion, the Colorado district court observed that FPI's evidence supported a "reasonable inference that Sabrepoint knew that, by hiring [Mathews] to research FPI, it was *possible* [Mathews] would publish an article about FPI as Rota Fortunae." *Farmland Partners Inc.*, 2021 WL 765362, at *7. It concluded this "foreseeability" that the article may be published was "insufficient to establish an intentional action for purposeful direction" at Colorado, as the purposeful-availment doctrine requires. *Id.* Sabrepoint correctly points out that the Colorado and Texas actions

18

share a focus on Sabrepoint's "involvement" with the Seeking Alpha article. But whether the factual issues in the two suits overlap or bear similarities is not the relevant inquiry; the issues must be *identical*. *See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex. 2002) (holding that collateral estoppel did not preclude litigation of issues in a second suit that were not identical to issues in the first action).

Here, the court of appeals correctly concluded that Sabrepoint did not conclusively establish that the Colorado court's finding is "identical" to any issue that will determine whether FPI may prevail on the claims it has raised in Texas. Sabrepoint complains that the court of appeals' analysis was too simplistic. In Sabrepoint's view, the court of appeals held, as a categorical matter, that a fact determined in the context of a jurisdictional question may never have preclusive effect in a case in which the same factual issue arises in the context of a merits question. But that is not what the court of appeals held. The mere fact that the Colorado court's determination was jurisdictional is not what prevents its finding regarding Sabrepoint's insufficient "involvement" from having preclusive effect in the Texas suit. Instead, we conclude that summary judgment based on collateral estoppel was improper because Sabrepoint did not conclusively establish how the facts decided in Colorado regarding lack of targeting for purposes of purposeful availment necessarily dispose of FPI's claims in Texas. Put differently, Sabrepoint failed to conclusively establish that the Colorado court's factual determinations are identical to findings that would preclude liability on the part of Sabrepoint under FPI's theory that Sabrepoint

19

"intended, knew, recklessly disregarded, and/or should have known" that Mathews would publish an article about FPI. *Cf. State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 697 (Tex. 2001) (concluding that collateral estoppel barred a plaintiff's claims for which the issues were "identical" to those in a previous action).

In particular, Sabrepoint's trial court briefing did not conclusively demonstrate that the Colorado court's findings—which acknowledged that Sabrepoint might have known it was possible Mathews would publish the article—precluded defamation liability on the part of Sabrepoint, which hired Mathews and assisted him in conducting the research on FPI out of which the article arose. *See Roe v. Patterson*, 707 S.W.3d 94, 99 (Tex. 2025) (stating that a plaintiff must show that the defendant "intended or knew that the defamatory statements . . . would be published"); *id.* at 98–99 (noting that the Restatement allows for defamation liability if "a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person" (quoting RESTATEMENT (SECOND) OF TORTS § 577 cmt. k (AM. L. INST. 1977))). The same can be said for other tort claims that FPI asserts, including tortious interference with prospective business relations and disparagement. *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("The classic proximate-cause tests for cause-in-fact and foreseeability apply to claims of tortious interference."). In short, the ultimate issue in the Colorado order concerned only whether Sabrepoint's conduct—or "involvement"—was purposefully directed *at Colorado*, and Sabrepoint

20

failed to demonstrate, conclusively, that—and how—the Colorado court's "involvement" findings necessarily preclude liability under each of FPI's claims in Texas. *Draughon*, 631 S.W.3d at 87–88.

The addition of two new defendants in FPI's Texas suit is also relevant. As the court of appeals noted, the presence of new parties further demonstrates that the Colorado and Texas issues are not identical. 703 S.W.3d at 135. As the Sabrepoint fund and general partner were not sued in the Colorado action, there was no possibility that the Colorado district court determined their respective "involvement" in the article's publication. Sabrepoint argues that these entities are in privity with the Colorado defendants such that the new defendants could only be held liable through the Colorado defendants' actions. *See Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex. 1982) ("Under a plea of collateral estoppel, essential issues of fact . . . are binding in a subsequent action between the same parties and those who stand in privity with them."). But that passing contention was also not conclusively established. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971) (noting that "determination of who are privies requires careful examination into the circumstances of each case as it arises"). We conclude that Sabrepoint has not conclusively established that the fund and general partner share an "identity of interest" with the Colorado defendants such that they are privies of one another. *See id.* This was an independent basis to reverse the summary judgment as to the defendants who were not parties to the Colorado suit.

21

## IV. Conclusion

The court of appeals correctly held, on the summary judgment record before it, that the trial court erred in determining that collateral estoppel bars FPI's suit against Sabrepoint in Texas as a matter of law. We affirm this portion of the appellate court's judgment. But the court of appeals erred in declaring void the portion of the trial court's order that granted Sabrepoint's motion to dismiss under the TCPA. We therefore reverse that portion of the court of appeals' judgment and remand to that court to consider the merits of FPI's appeal from that order.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** April 25, 2025

22